IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JEREMY A. FRANKS,<br><br>                    Plaintiff,<br><br>      vs.<br><br>NEBRASKA      DEPARTMENT      OF<br>CORRECTIONAL      SERVICES      OF<br>TECUMSEH,<br><br>                    Defendant. | **4:22CV3233**<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Jeremy A. Franks ("Franks") filed a Complaint on October 20, 2022. Filing No. 7.  He has been given leave to proceed in forma pauperis. Filing No. 8.  The Court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

### I.  SUMMARY OF COMPLAINT

Franks is an inmate in the custody of the Nebraska Department of Correctional Services ("NDCS") currently confined in the Tecumseh State Correctional Institution ("TSCI").  At the time he filed his Complaint, Franks was confined in the Reception and Treatment Center ("RTC").  Filing No. 7 at 2.  Franks filed this action pursuant to 42 U.S.C. § 1983 against the "Nebraska Department of Correctional Services of Tecumseh," which is named as the defendant in the caption and which the Court understands to mean the NDCS and the TSCI, as well as against the following defendants named in the body of the Complaint in their individual and official capacities: Sgt. Kallen Nissen; Sgt. Marc Drappel; Cpl. Joe Bryan; Cpl. Simms; Cpl. Erickson; Cpl. Pedraza; Cpl. Husbands and

driving partner Jane Doe; Dr. Kasselman;[1] Dr. Damme; LPN Dave; Lieutenant John Doe; Captain John Doe; Major John Doe; Warden John Doe; the Nebraska Attorney General; the U.S. Attorney General; the State of Nebraska; Doctor's Assistant Danaher; Dr. Williams; and Mental Health Practitioner Marv Chauza (collectively "Defendants").[2] Filing No. 7 at 11. Franks asserts violations of his constitutional rights arising out of an October 23, 2020, strip search in which he alleges he was subjected to excessive force and received injuries for which certain Defendants have failed to provide him proper medical treatment.

On October 23, 2020, at approximately 7:35 p.m., Nissen removed Franks from his cell and took Franks to holding for a strip search. Nissen reported that he saw a "candle/flame/cellular device" in Franks' cell, though Franks alleges his cellmate started a rumor about a device being present and "no device ever existed nor was accounted for or mentioned in any further reports." Id. at 16 (punctuation corrected). During the strip search, Nissen kept Franks naked for an extended period of time which led to Franks stating, "This [sic] really weird to keep him naked this long," and asking "[i]f Nissen was gay or something since he was left naked for so long." Id. Nissen was standing 1 to 1.5 feet outside the holding cell door "the entire time with his body sideways and arm outreached when needed . . . . facing the camera." Id. The counter in holding was to Nissen's left and three female corporals, Pedraza, Simms, and Erickson, were ten to fifteen feet from Nissen in full view of the camera.

---

[1] Franks refers to this defendant as both "Dr. Kastleman" and "Kasselman" within in the Complaint. *See* Filing No. 7 at 11, 28. The Court is aware from prior litigation involving this defendant that his name is actually Dr. Jeffrey Kasselman, and the Court will utilize this name throughout this order.

[2] Individual defendants will generally be referred to by their last names unless otherwise specified.

Franks alleges he "never came close to Nissen other than giving clothing" and he was

> naked[,] covering himself '4' f[ee]t away from Nissen when Nissen started to spray Franks with chemical agent. Franks went straight to the ground flattening out as not knowing what was going on, and then Nissen punching on Franks multiple times in the back and the ribs. Then yanking his arms behind his back. Franks has COPD and was choking and couldn't breath[e], it was at this time Nissen then smeared pepper spray with his hand all over Franks groin and squeezed several times putting Franks in extreme pain.

*Id*. at 17 (as in original). Nissen then twisted Franks' ankles to his lower back and sat on them, and shortly thereafter Drappel and Bryan entered the cell to take over for Nissen "while the shackels [sic] were put on Franks [while] naked on the ground face down [with his] body [and] face full of chemical agent." *Id*. at 13. Drappel and Bryan continued to sit on Franks' legs as they were pinned to the small of his back and one of them knelt on Franks' upper back and shoulders, and Franks remained pinned in that position for forty-five minutes to an hour. *Id*. at 13, 17.

Franks attached to his Complaint a copy of the October 23, 2020, Disciplinary Misconduct Reporting Form ("Misconduct Report") completed by Nissen. *Id*. at 21–22. Nissen reported that, during the strip search, Franks appeared as if he was going to strike Nissen so Nissen took a half step back and delivered two, one to half second bursts of chemical agent towards Franks' brow area. Nissen then reported Franks resisted his verbal directives "to 'get on the ground'" so Nissen "entered the cell and wrapped both of [his] arms around [Franks'] hips, stabilizing the body, and applied forward and downward pressure securing [Franks] onto the floor in the holding cell." *Id*. at 21. According to Nissen, Franks continued to resist Nissen's directives to put his arms out so "Nissen delivered one straight punch to right side of [Franks'] torso" as well as placing Franks "into

a joint wrist lock applying pressure to the wrist until [Franks] complied with [Nissen's] verbal directives to place his arm behind back." *Id*. at 22.  Franks disputes what Nissen wrote in his Misconduct Report as untrue because "the camera capture[d] his actions." *Id*. at 17.

As a result of this incident, Franks suffered injuries to his right and left shoulders and his right Achilles ankle and received reconstructive surgery on his right shoulder on June 4, 2021.  *Id*. at 4, 16.  Franks alleges Husbands, who admitted to working 72 hours that week "and was exhausted," was driving Franks to his surgery and crossed the center and outer lines on the road seventeen times putting Franks' life in danger.  *Id*. at 18.  Husbands and his driving partner, Jane Doe, also were flirting back and forth during the drive.  *Id*. at 14.  Franks further claims Husbands overly tightened the hand cuffs on Franks before leaving for the surgery and again after Franks' surgery.  As Franks alleges, it normally requires "three clicks" of the hand cuffs because "Franks' wrists are so big," but Husbands "cinched them . . . eight clicks cutting off the blood flow and the IV," which surgery staff had placed in Franks' left hand, causing Franks' hand to "bl[o]w . . . up like a balloon."  *Id*. at 18 (spelling corrected).  Franks' hand "took over a week to normalize." *Id*.

After his surgery, Franks alleges "Dr. Kas[sel]man and Dr. Damme claim they forgot to give Franks pain medications which is so very painful and extreme, it's going to take over a year of physical therapy." *Id*.  Franks also alleges when Dr. Kasselman scheduled Franks for an MRI of his right shoulder, he "failed to schedule the left shoulder and right Achilles ankle at the same time." *Id*.  Franks alleges he still needs medical treatment for his left shoulder and right Achilles injury which he "did not receive yet," *Id*. at 4, and he

4

"has had a lot of complications with the right shoulder and use of the arm and getting medical treatment for his left shoulder and Achilles right ankle," *Id*. at 18 (capitalization corrected).  Franks states "[t]here are two tears in the left shoulder Franks can feel esp[ecially] from his Fibromyalgia autoimmune disease which is a nerve disorder and . . . amplifies all injuries . . . [and] the pain." *Id*.  At some unspecified point, Franks was transferred to the RTC where Danaher allegedly would not give Franks pain medication or treat him and Dr. Williams and Chauza stopped Franks' "treatment for [his] PTSD from this incident since management changed . . . ." *Id*. at 14–15.

As relief, Franks seeks $8.7 million in damages, as well as "medical treatment on his left shoulder and right Achilles ankle[,] to successfully finalize physical therapy treatment on his left shoulder," and "a full [right] shoulder replacement at some given time when this wears out." *Id*. at 19 (capitalization and spelling corrected).

## II.  APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate.  *See* 28 U.S.C. §§ 1915(e) and 1915A.  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).  However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims.  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III.  DISCUSSION

**A.  Lack of Personal Involvement and Improper Defendants**

Franks names the Nebraska Attorney General, the U.S. Attorney General, the State of Nebraska, and four John Does (a Lieutenant, a Captain, a Major, and a Warden) as defendants in their individual and official capacities (hereinafter the "Policy Defendants").  Filing No. 7 at 11.  His allegations against the Policy Defendants consist entirely of the following: "Equal Protection[;] Deliberate Indifference Standard[;] Those

who make policies[;] who fail to make or enforce policies[;] fail to act on risks they know about[;] corporate policies[;] municipal policy failing adequate train & supervise & investigate use of force complaints[;] code of silence – municipal liability." *Id*. at 15 (as in original).  These allegations fail to state a plausible claim for relief against any of these defendants.

"To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *Kingsley v. Lawrence Cty.*, 964 F.3d 690, 700 (8th Cir. 2020) (quoting *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017)).  A plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.  *Iqbal*, 556 U.S. 662, 676 (2009).  Moreover, "[i]t is well settled that § 1983 does not impose respondeat superior liability." *Hughes v. Stottlemyre*, 454 F.3d 791, 798 (8th Cir. 2006) (internal quotation marks omitted).  "Supervisors can, however, 'incur liability . . . for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of violative practices.'" *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (quoting *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993)).

Here, Franks' conclusory allegations that the Policy Defendants are responsible for unspecified prison policies and failed to adequately train, supervise, or investigate use-of-force complaints are an improper attempt to impose respondeat superior liability on the Policy Defendants for the acts of other NDCS staff.  Franks has alleged no facts with respect to the Policy Defendants' involvement in the October 23, 2020, alleged assault by Nissen or his allegedly deficient medical treatment nor has Franks alleged any facts showing that any of the Policy Defendants failed to take corrective action or tacitly

authorized any violative practices. Accordingly, Franks has failed to state a claim for relief against the John Doe defendants, the Nebraska Attorney General, the U.S. Attorney General, and the State of Nebraska, and they will be dismissed from this action.

Additionally, Franks cannot pursue his section 1983 claims against the State of Nebraska, the NDCS, or the TSCI, because states or governmental entities that are considered arms of the state are not suable "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). Thus, the State of Nebraska, the NDCS, and the TSCI must be dismissed from this action for failure to state a claim upon which relief may be granted.

**B. Sovereign Immunity**

Franks sues the remaining NDCS defendants, Nissen, Drappel, Bryan, Simms, Erickson, Pedraza, Husbands, Jane Doe, Dr. Kasselman, Dr. Damme, LPN Dave, Danaher, Dr. Williams, and Chauza (collectively "the NDCS Defendants"), in both their individual and official capacities for damages and injunctive relief. The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446–47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *Dover Elevator Co.*, 64 F.3d at 447; *Nevels v. Hanlon*, 656 F.2d 372, 377–78 (8th Cir. 1981). There is nothing in the record before the Court showing that the State of Nebraska waived, or that Congress overrode,

sovereign immunity in this matter. Thus, the Eleventh Amendment bars Plaintiff's claims for damages against the NDCS Defendants in their official capacities.

However, an exception to sovereign immunity was recognized by the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908), which permits prospective injunctive relief against state officials sued in their official capacities for ongoing federal law violations. Sovereign immunity also does not bar claims for damages brought pursuant to 42 U.S.C. §1983 against state officials acting in their personal or individual capacities. Thus, the Court will analyze Franks' constitutional claims to determine whether he has alleged plausible claims for relief against any of the NDCS Defendants.

**C. Claims Lacking Factual Basis and Non-Cognizable Claims**

Franks lists several federal constitutional and statutory provisions in the "Basis for Jurisdiction" section of his Complaint, and, liberally construed, he seeks to bring claims under the First Amendment, the Fourth Amendment, the Fifth Amendment, the Fourteenth Amendment Equal Protection Clause, and the Prison Rape Elimination Act ("PREA"). *See* Filing No. 7 at 11–12. However, Franks has failed to state a claim for relief under any of these provisions as either the facts alleged do not support such a claim or the provision relied upon is inapplicable.

*1. First Amendment*

Franks may be attempting to raise a First Amendment retaliation claim based on Nissen spraying with him chemical agent after Franks commented that it was "weird" Nissen kept him naked for an extended period of time and questioned "[i]f Nissen was gay or something." *Id.* at 16. To allege a First Amendment retaliation claim, a plaintiff must "show (1) he engaged in a protected activity, (2) the government official took adverse

9

action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson Cnty. Mo.*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). "Neither insults to prison staff nor noncompliance with a prison guard's orders constitute First Amendment protected activity and thus cannot support a prisoner's First Amendment retaliation claim." *Caliz v. City of Los Angeles*, No. CV 15-5161-JLS (KS), 2017 WL 8186293, at *5 (C.D. Cal. Nov. 3, 2017), *report and recommendation adopted*, No. CV 15-5161-JLS (KS), 2018 WL 1226017 (C.D. Cal. Mar. 6, 2018) (citing *Durham v. Roberts*, 103 F.3d 138, at *4 (9th Cir. 1996) (unpublished) (using hostile and sexual language towards a prison guard is not protected activity for the purposes of a First Amendment retaliation claim); *Garner v. Nash*, No. 316CV00410RCJWGC, 2017 WL 937719, at *3 (D. Nev. Mar. 9, 2017) (insulting language to prison officials is not protected by the First Amendment)). Thus, Franks has failed to allege a plausible First Amendment retaliation claim as his statements to Nissen do not constitute protected activity, and this claim will be dismissed.

### 2. Fourth Amendment

Franks appears to assert an unreasonable search and seizure claim under the Fourth Amendment based on the search of his cell and his person. However, "[t]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). "Random searches of inmates, individually or collectively, and their cells and lockers are valid and necessary to ensure the security of the institution and the safety of inmates and all others

within its boundaries." *Id.* at 529. Accordingly, to the extent Franks seeks relief under the Fourth Amendment, such claim is dismissed for failure to state a claim.

### 3. Fifth Amendment

Franks also cites to the Fifth Amendment's due process protections as a basis for his claims. However, "[t]he due process clause of the Fifth Amendment applies only to the federal government," *Truong v. Hassan*, 829 F.3d 627, 631 n.4 (8th Cir. 2016), and is inapplicable here.

### 4. Fourteenth Amendment Equal Protection

Franks cites to the Fourteenth Amendment's Equal Protection Clause as another basis for his claims and alleges in conclusory fashion that various Defendants violated his equal protection rights. *See* Filing No. 7 at 11–15. "The Equal Protection Clause of the Fourteenth Amendment . . . is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Where, as here, a plaintiff has not shown discrimination based on membership in a class or group, the Supreme Court's "cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Mensie v. City of Little Rock*, 917 F.3d 685, 692 (8th Cir. 2019) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Franks does not allege anywhere in his Complaint that he was treated less favorably than others who were similarly situated to him, and his equal protection claim, thus, fails. *See Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015) (class-of-one equal protection claim

failed where plaintiffs did not allege facts showing they were similarly situated to others treated more favorably).

### 5. Prison Rape Elimination Act

Finally, Franks cites to the PREA as grounds for his claims against Nissen. However, the PREA "does not create a private right of action enforceable by an individual civil litigant." *Scott v. Haynes*, No. 4:23-CV-04115-RAL, 2024 WL 1049485, at *25 (D.S.D. Mar. 11, 2024), *reconsideration denied*, No. 4:23-CV-04115-RAL, 2024 WL 2045748 (D.S.D. May 8, 2024) (internal quotation omitted). Accordingly, Franks' PREA claim will be dismissed for failure to state a claim.

## D. October 23, 2020, Strip Search Claims

Liberally construed, Franks alleges claims under the Eighth Amendment against Nissen, Drappel, and Bryan for subjecting him to excessive force during the October 23, 2020 strip search and against Simms, Erickson, and Pedraza for failing to intervene to prevent or stop the use of excessive force against Franks.

### 1. Excessive Force

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "It is well established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual punishment clause." *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010) (internal quotation omitted). "One acts maliciously by undertaking, without just cause or reason, a course of action intended to

injure another; in contrast, one acts sadistically by engaging in extreme or excessive cruelty or by delighting in cruelty." *United States v. Miller*, 477 F.3d 644, 647 (8th Cir. 2007) (internal quotation omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson*, 866 F.3d at 974 (quoting *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)).  This inquiry turns on "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted," from which "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Id.* (quoting *Whitley*, 475 U.S. at 321).  "Whether the force used was reasonable is 'judged from the perspective of a reasonable officer on the scene' and in light of the particular circumstances." *Story v. Norwood*, 659 F.3d 680, 686 (8th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)).

Here, Franks essentially alleges Nissen began to spray Franks with chemical agent without provocation when Franks was standing four feet away from Nissen and punched Franks multiple times despite Franks immediately "flattening out" on the ground. Filing No. 7 at 17.  Franks disputes Nissen's account of the incident in the Misconduct Report and alleges the cameras within view of the holding cell support Franks' account of events.  Franks further alleges Nissen applied pepper spray to Franks' groin and "squeezed several times" causing Franks "extreme pain" while he was on the ground with

13

his arms behind his back, choking, and unable to breathe.  *Id*.  Nissen then twisted Franks'
ankles to his lower back and sat on them, Franks was placed in shackles, and Drappel
and Bryan then continued to sit on Franks' legs and kneel on Franks' upper back and
shoulders for forty-five minutes to an hour.  *Id*. at 13, 17.  As a result of this incident,
Franks suffered injuries to both shoulders and his right ankle and received surgery on his
right shoulder.

Taken as true and liberally construed, Franks' factual allegations are sufficient to
state a plausible excessive force claim against Nissen, Drappel, and Bryan in their
individual capacities, and this claim will proceed to service of process against these three
defendants.

### 2.  Failure to Protect or Intervene

Franks alleges Corporals Simms, Erickson, and Pedraza were standing ten to
fifteen feet away from Nissen, and the three corporals "stood by while Franks was
attacked the entire time and did nothing to stop Nissen nor say anything."  *Id*. at 13.  An
"officer may be liable if he does not intervene to prevent the use of excessive force when
'(1) the officer observed or had reason to know that excessive force would be or was
being used, and (2) the officer had both the opportunity and the means to prevent the
harm from occurring.'"  *Robinson v. Payton*, 791 F.3d 824, 829 (8th Cir. 2015) (quoting
*Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009)).

Here, Franks' fails to allege sufficient facts from which the Court can reasonably
infer that the three corporals observed or had reason to know that Nissen was subjecting
Franks to excessive force or that the corporals had the opportunity and means to prevent
harm from occurring.  Franks alleges only that Simms, Erickson, and Pedraza were within

ten to fifteen feet of Nissen as he stood one to one and a half feet outside Franks' holding cell. The Court cannot infer from Franks' allegations whether the three corporals were able to observe what was happening between Franks and Nissen inside Franks' holding cell or had any reason to suspect that Nissen would spray Franks with chemical agent without any provocation. As pleaded, the Court finds Franks' allegations are insufficient to state a plausible failure-to-intervene claim against Simms, Erickson, and Pedraza.

**E. June 4, 2021, Claims Against Husbands and Jane Doe**

Franks alleges an Eighth Amendment claim against Husbands and his driving partner, Jane Doe, for their conduct while transporting Franks to and from his right shoulder surgery on June 4, 2021. The Eighth Amendment generally prohibits cruel and unusual punishment and provides a "right to safe and humane conditions of confinement." *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). A successful claim under the Eighth Amendment requires that the plaintiff show "[a] denial of safe and humane conditions" resulting "from an officer's deliberate indifference to a prisoner's safety." *Id.* (citing *Fruit v. Norris*, 905 F.2d 1147, 1150 (8th Cir. 1990)). "Deliberate indifference requires 'more than mere negligence,' but does not require acting 'for the very purpose of causing harm or with knowledge that harm will result.'" *Id.* (quoting *Farmer*, 511 U.S. at 835). The Supreme Court has stated that "acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836.

Here, Franks' alleges Husbands and Jane Doe were deliberately indifferent to his safety because Husbands admitted to being exhausted when he drove Franks to his surgery and crossed the outer and center lines on the road seventeen times while

15

Husbands and Jane Doe flirted with each other. Even taken as true, these allegations are insufficient to allege a plausible Eighth Amendment deliberate indifference claim against Husbands and Jane Doe. Franks' allegations suggest that Husbands and Jane Doe were at least negligent, but "a constitutional claim cannot be based on mere negligence." *Brown v. Morgan*, 39 F.3d 1184, 1994 WL 610993 (8th Cir. 1994) (unpublished) (per curium). Even assuming that Husbands' driving was reckless, "[w]ithout more than reckless driving, . . . we cannot conclude that [the defendants'] conduct amounted to deliberate indifference." *Brown*, 518 F.3d at 561. Given these insufficient allegations and the lack of any transport-related injury to Franks, Franks' claims related to his transportation by Husbands and Jane Doe will be dismissed.

Franks also alleges an excessive force claim against Husbands based on Husbands "intentionally" overly tightening the hand cuffs on Franks before leaving for his surgery and again after Franks' surgery. Filing No. 7 at 13. When Husbands cinched the handcuffs "eight clicks" as opposed to the necessary "three clicks," the blood flow and IV to Franks' left hand was cut off causing Franks' hand to swell and remain swollen for over a week. *Id.* at 18. Liberally construed, the Court concludes Franks' allegations are sufficient to state a plausible excessive force claim against Husbands in his individual capacity and such claim will be allowed to proceed.

## F. Medical Treatment Claims

Lastly, Franks' Complaint raises Eighth Amendment claims of deliberate indifference to his serious medical needs against Defendants LPN Dave, Dr. Kasselman, Dr. Damme, Danaher, Dr. Williams, and Chauza. To establish an Eighth Amendment violation, a prisoner must demonstrate an objectively serious medical need that the

defendant knew about and deliberately disregarded. *Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020), *reh'g denied* (May 12, 2020) (citing *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018)).  Ascertaining "[w]hether an official was deliberately indifferent requires both an objective and a subjective analysis." *Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017) (quoting *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014)).

"The objective component of a claim for deliberate indifference to serious medical needs is satisfied if the medical need in question 'is supported by medical evidence, such as a physician's diagnosis, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Bailey v. Feltmann*, 810 F.3d 589, 594 (8th Cir. 2016) (internal quotation omitted)).  Establishing the subjective component of a deliberate indifference claim requires "more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Thompson v. King*, 730 F.3d 742, 747 (8th Cir. 2013) (internal citations and quotation marks omitted).  Thus, to be liable for deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In reviewing Franks' medical treatment claims, the Court has considered the copies of grievances and Inmate Interview Requests ("IIR") Franks attached to his Complaint. *See* Filing No. 7 at 23–74.

### 1. LPN Dave

Franks alleges LPN Dave had inmates call him "Doctor Dave," even though he was not a doctor, "so Franks kept kiting LPN Dave [as Doctor Dave] for medical help and

17

no person knew him by that name.  When confronted, LPN Dave threatened Franks[ and] by default assaulted Franks." *Id*. at 14.  Franks attached three IIRs addressed to "Dr. Dave" dated July 26, 2021, July 27, 2021, and August 16, 2021. *Id*. at 47, 50, 52.  Franks received a response to his medical inquiry in the July 26, 2021, IIR, but the other two IIRs addressed to "Dr. Dave" informed Franks that he needed "to put in a kite to be seen by doctor staff at our facility" and "[w]e don't have a doctor Dave." *Id*. at 47, 50, 52.  In an IIR dated November 30, 2021, Franks wrote to LPN Dave that it was improper to have inmates call him doctor and complained that LPN Dave had not listened to his medical complaints. *Id*. at 53.  LPN Dave denied that he told Franks he was a "doctor" and stated, "you were seen by ortho, he explained to what you needed to do." *Id*.  Additionally, in response to Franks' grievance that "LPN Dave screams at [Franks that] he will use physical force [and/]or [Franks] will never get healthcare if [Franks] ever threaten[s] [LPN Dave] again," *Id*. at 28, NDCS staff stated, "Your assertion that LPN David threatened you during a medical pass is not supported by reports from LPN Davis [sic] and Dr. Harbert. You are encouraged to continue working with medical staff to address your medical concerns." *Id*. at 29.

Even when liberally construed, Franks' allegations fail to raise an inference that LPN Dave was deliberately indifferent to Franks' serious medical needs.  Nothing in the Complaint or the attached documents indicate that Franks was prevented from receiving medical treatment for a serious condition due to his kiting of "Dr. Dave" or even that necessary treatment was delayed to Franks' detriment.  Nor do Franks' conclusory allegations that LPN Dave threatened him and assaulted him "by default" suggest any

deliberate indifference to Franks' serious medical needs.  Accordingly, Franks' claims against LPN Dave will be dismissed for failure to state a claim.

### 2.  Dr. Kasselman and Dr. Damme

Liberally construed, Franks alleges Dr. Kasselman and Dr. Damme failed to order pain medication for Franks after his right shoulder surgery for at least a month, and he suffered extreme pain as a result.  Franks further alleges that Dr. Kasselman and Dr. Damme have failed to provide him treatment for his left shoulder and right Achilles ankle. The constitutional obligation to provide medical care to those in custody may be violated when officials "intentionally deny[ ] or delay[ ] access to medical care or intentionally interfer[e] with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) ("[D]elays in treating painful medical conditions, even if not life-threatening, may support an Eighth Amendment claim.") (quotations omitted).

Giving Franks the benefit of every possible inference at this early stage in the proceedings, the Court finds that Franks has stated a plausible claim of deliberate indifference to his serious medical needs against Dr. Kasselman and Dr. Damme, and this claim may proceed to service of process against these defendants in both their official and individual capacities for Franks' requested relief of damages and prospective injunctive relief (i.e. medical treatment).

### 3.  Danaher

Franks alleges that, after he was transferred to the RTC at some unspecified time, Danaher would not give Franks pain medication or treat him.  Franks was confined in the RTC when he filed his Complaint on October 20, 2022, and as of March 10, 2023, he had

been transferred back to the TSCI where he currently remains.  *See* Filing No. 7 at 2; Filing No. 12.  Franks alleges no facts regarding how long he was denied pain medication or treatment, what medical condition the pain medication or treatment was needed for, or whether he suffered any serious risk of injury to his health as a result of the denial of the pain medication or treatment.  As pleaded, the Court finds Franks' conclusory allegations against Defendant Danaher are insufficient to state a plausible Eighth Amendment deliberate indifference claim, and such claim will be dismissed.

    *4.  Dr. Williams and Chauza*

Lastly, Franks alleges Dr. Williams and Chauza of the RTC stopped Franks' "treatment for [his] PTSD from this incident since management changed . . . ."  Filing No. 7 at 14–15.  These are the only allegations against Dr. Williams and Chauza within the entire Complaint.  As with the allegations against Danaher, the Court finds this conclusory statement insufficient to state a plausible Eighth Amendment deliberate indifference claim against Dr. Williams and Chauza, and this claim will be dismissed.

## IV.  OTHER PENDING MOTION

On November 15, 2023, Franks filed a motion "requesting a court date for this lawsuit."  Filing No. 20.  While the Court has determined that this matter may proceed to service of process against certain Defendants, this case is still in the very early stages and no "court date" or trial date will be set until after Defendants have filed responses to the Complaint and the Court progresses this case towards final resolution.  Accordingly, Franks' motion for a court date is denied as premature.

## V.  CONCLUSION

Upon review of Franks' Complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A, the Court finds that Franks has alleged plausible Eighth Amendment excessive force claims against Defendants Nissen, Drappel, Bryan, and Husbands in their individual capacities and plausible Eighth Amendment deliberate indifference claims against Dr. Kasselman and Dr. Damme in their individual and official capacities.  These claims will be allowed to proceed to service of process as set forth below.  However, the Court cautions Franks that this is only a preliminary determination based on the allegations found within the Complaint.  This is not a determination of the merits of Franks' claims or potential defenses thereto.  All other claims and Defendants will be dismissed as specified below.

IT IS THEREFORE ORDERED that:

1.      The following Defendants and claims shall be dismissed or proceed further as specified below:

        a.      Defendants the State of Nebraska, the "Nebraska Department of Correctional Services of Tecumseh," the NDCS, the TSCI, the Nebraska Attorney General, the U.S. Attorney General, Lieutenant John Doe, Captain John Doe, Major John Doe, and Warden John Doe are dismissed from this action without leave to amend.

        b.      Franks' claims under the First, Fourth, and Fifth Amendments, the Equal Protection Clause of the Fourteenth Amendment, and the PREA are dismissed for failure to state a claim and without leave to amend.

     c.     Franks' claims against Defendants Simms, Erickson, Pedraza, Jane Doe, LPN Dave, Danaher, Dr. Williams, and Chauza in the individual and official capacities are dismissed without prejudice for failure to state a claim upon which relief may be granted.

     d.     Franks' claims against Nissen, Drappel, Bryan, and Husbands in their official capacities are dismissed as barred by sovereign immunity.

     e.     Franks' claims for damages against Dr. Kasselman, and Dr. Damme in their official capacities are dismissed as barred by sovereign immunity.

     f.     Franks' Eighth Amendment excessive force claims against Nissen, Drappel, Bryan, and Husbands in their individual capacities may proceed to service of process.

     g.     Franks' Eighth Amendment deliberate indifference claims against Dr. Kasselman and Dr. Damme in their individual and official capacities may proceed to service of process.

2.     The Clerk of the Court is directed to remove "Nebraska Department of Correctional Services of Tecumseh" as a defendant to this action and to add as defendants Sgt. Kallen Nissen, Sgt. Marc Drappel, Cpl. Joe Bryan, and Cpl. Husbands, all in their individual capacities, and Dr. Jeffrey Kasselman and Dr. Jeffrey Damme[3] in both their individual and official capacities.

---

[3] As with Dr. Kasselman, the Court is aware from previous litigation that this defendant's full name is Dr. Jeffrey Damme.

3.      For service of process on Defendants Sgt. Kallen Nissen, Sgt. Marc Drappel, Cpl. Joe Bryan, and Cpl. Husbands in their individual capacities and Dr. Jeffrey Kasselman and Dr. Jeffrey Damme in their individual and official capacities, the Clerk of the Court is directed to complete two sets of summons and USM-285 forms for each Defendant.  The service address for the first set of forms is:

> Office of the Nebraska Attorney General
> 2115 State Capitol
> Lincoln, NE 68509.

The service address for the second set of forms is:

> Nebraska Department of Correctional Services
> Tecumseh State Correctional Institution
> PO Box 900
> Tecumseh, NE 68450.

4.      The Clerk of the Court shall forward the summons forms and USM-285 forms together with sufficient copies of the Complaint, Filing No. 7, and this Memorandum and Order to the United States Marshals Service.

5.      The Marshals Service shall serve Defendants Sgt. Kallen Nissen, Sgt. Marc Drappel, Cpl. Joe Bryan, and Cpl. Husbands in their individual capacities and Dr. Jeffrey Kasselman and Dr. Jeffrey Damme in their individual and official capacities by "leaving the summons at the office of the Attorney General with the Attorney General, deputy attorney general, or someone designated in writing by the Attorney General, or by certified mail or designated delivery service addressed to the office of the Attorney General."  Neb. Rev. Stat. § 25-510.02(1) (prescribed method for serving the State of Nebraska or any state agency); *see also* Federal Rule of Civil Procedure 4(j)(2); Neb. Rev. Stat. § 25-511 ("Any employee of the state, as defined in section 81-8,210, sued in an individual capacity for an act or omission occurring in connection with duties performed on the state's behalf,

regardless of whether the employee is also sued in an official capacity, must be served by serving the employee under section 25-508.01 and also by serving the state under section 25-510.02.").

6.    The Marshals Service shall also serve Defendants Sgt. Kallen Nissen, Sgt. Marc Drappel, Cpl. Joe Bryan, Cpl. Husbands, Dr. Jeffrey Kasselman, and Dr. Jeffrey Damme in their individual capacities by certified mail or other authorized method of service at the Nebraska Department of Correctional Services' address shown above.  *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (prescribed method for serving an individual).

7.    The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.[4]

8.    Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint.  However, Plaintiff is granted, on the Court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

9.    Plaintiff is hereby notified that failure to obtain service of process on the Defendants within 90 days of the date of this order may result in dismissal of this matter

---

[4] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service.  *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013).  Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases."  *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory).  *See, e.g.*, *Beyer v. Pulaski County Jail*, 589 Fed. Appx. 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the Jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

without further notice.  A defendant has 21 days after receipt of the summons to answer or otherwise respond to a complaint.

10.     The Clerk of Court is directed to set a case management deadline in this case with the following text: **December 26, 2024**: service of process to be completed.

11.     Franks' motion for a court date, Filing No. 20, is denied as premature.


Dated this 27th day of September, 2024.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge